## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| LORI HENINGBURG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action File Number |
| v. | ) | |
| | ) | _____ |
| CSS CORP. and | ) | |
| JOHN O. AGULUE | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Lori Heningburg ("Plaintiff" or "Ms. Heningburg"), by and through her attorneys, and files this Complaint against Defendants CSS Corp. ("CSS") and John O. Agulue ("Agulue" and together with CSS collectively the "Defendants"), alleging the following facts and claims, and showing this Court as follows:

### INTRODUCTION

This is an action for failure to pay overtime wages, unlawful deductions from wages, and for retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. (hereinafter, the "FLSA"), as well as for interference and retaliation in violation of the Family Medical Leave Act, 29 U.S.C. § 2601, et seq. (hereinafter, the "FMLA").

## PARTIES, JURISDICTION AND VENUE

### 1.

Plaintiff Lori Heningburg is a resident of Henry County, Georgia, and is a former employee of CSS.

### 2.

Defendant CSS Corp. is a Georgia corporation that may be personally served with Summons and a copy of this Complaint through its registered agent, John O. Agulue at 9813 Washington Circle, Jonesboro, GA 30238.  CSS's principal place of business is located at 8896 Tara Boulevard, Suite 500, Jonesboro, Clayton County, Georgia.

### 3.

Defendant John O. Agulue is a resident of Jonesboro, Clayton County, Georgia and may be served with Summons and copy of this Complaint at his residence located at 9813 Washington Circle, Jonesboro, GA 30238.

### 4.

Defendants CSS and Agulue are subject to the jurisdiction and venue of this Court pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 216(b), and 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL BACKGROUND

5.

On or about March of 2008, Ms. Heningburg was hired as a staffing coordinator for Defendant CSS.

6.

Ms. Heningburg was hired to work out of CSS's principal place of business located in Jonesboro, Georgia, although Ms. Heningburg performed work-related tasks not only at CSS's Jonesboro office location, but also in the surrounding Jonesboro and neighboring McDonough areas.

7.

At all times during her employment Ms. Heningburg was paid an hourly wage for the work she performed. That hourly wage ranged from $9.25 per hour when Plaintiff was initially hired, to $13.75 per hour, which was Ms. Heningburg's hourly rate at the time she was terminated from CSS.

8.

Ms. Heningburg began her employment as a staffing coordinator, was later promoted to administrative assistant, and was thereafter promoted to the position of executive administrative assistant. Throughout her employment with CSS Ms. Heningburg reported directly to Defendant Agulue.

9.

Ms. Heningburg's duties included the preparation of payroll and the performance of general administrative tasks, among other things, all at the direction of Agulue.

10.

Throughout Ms. Heningburg's employment with CSS, Agulue exercised complete operational control over CSS' day-to-day operations including setting employment policies and payroll practices, as well as making all final decisions regarding the compensation of employees and the hiring and firing of employees.

11.

From the inception of her employment through May of 2011, Ms. Heningburg worked on a full time basis for a minimum of forty (40) hours per week (the "full-time period").

12.

Often, during the full-time period, Ms. Heningburg was required to work hours in excess of forty hours per week.

13.

For example, during this period Ms. Heningburg was required to work in excess of forty hours per week in order to process payroll prior to holiday deadlines.

14.

Ms. Heningburg was also required to work in excess of forty hours per week in order to participate in weekend open-houses that were scheduled by Agulue.

15.

Ms. Heningburg also routinely worked in excess of forty hours per week responding to after-hours calls that she received on the company mobile phone designated for that purpose.

16.

Finally, Ms. Heningburg was often required to work through lunch or was unable to take a thirty minute lunch break which resulted in her working more than forty hours per week.

17.

Notwithstanding the fact that Ms. Heningburg routinely worked in excess of forty hours per week during the full-time period, Ms. Heningburg was not appropriately compensated at time and one half for the hours she worked in excess of forty.

18.

The overtime worked by Ms. Heningburg was described, for clerical payroll purposes, as "Retro Pay", in a deliberate effort by Defendants to avoid

compensating Ms. Heningburg at the appropriate overtime rate for any hours worked by Ms. Heningburg in excess of forty hours per week.

19.

Defendants' practice of classifying overtime as "Retro Pay" affected all of its employees, and continued throughout the entirety of Ms. Heningburg's employment.

20.

In addition, Defendants engaged in the practice of automatically deducting a half-hour for Ms. Heningburg's lunch period, even on days when Ms. Heningburg's job responsibilities required that she work through her lunch.

21.

Further, on days where Ms. Heningburg failed to clock out for a lunch period, Defendants engaged in the practice of automatically deducting three quarters of an hour, regardless of whether Ms. Heningburg worked through any of the automatic lunch period and regardless of whether Ms. Heningburg took a lunch period at all.

22.

Defendants' practice of automatic deductions for lunch periods without correlation to the actual amount of time taken for lunch affected all of its

employees, and continued throughout the entirety of Ms. Heningburg's employment.

23.

Ms. Heningburg was also occasionally required to take after-hours phone calls on behalf of CSS and to perform weekend work. Ms. Heningburg was sometimes compensated at a straight hourly wage for this time, even when Ms. Heningburg worked in excess of forty hours. Often times Ms. Heningburg was not compensated at all for this work that occurred outside of normal working hours.

24.

Defendants' practice of failing to properly compensate employees for work that occurred outside of normal working hours affected all of its employees, and continued throughout the entirety of Ms. Heningburg's employment.

25.

Throughout her employment with CSS, Ms. Heningburg communicated to Agulue that CSS's practices as described herein were in violation of federal law. Further, throughout her employment with CSS, Ms. Heningburg notified other CSS employees when they had been underpaid and was vociferous in encouraging those employees to demand that they be paid what they were owed under the law.

26.

In late 2011, Ms. Heningburg was treated for acute anemia, which treatment included several blood transfusions over a period of months.  CSS was aware of Ms. Heningburg's condition and Ms. Heningburg returned to work after each treatment without incident.

27.

In the Spring of 2012, Ms. Heningburg's physicians identified a large tumor as the cause of her anemia, and scheduled surgery for March 19, 2012.  Ms. Heningburg provided CSS with medical paperwork notifying the company of the scheduled surgery and requesting two weeks leave to recover.  CSS granted this request for leave.

28.

Ms. Heningburg's surgery revealed a tumor weighing twice the anticipated size.  As a result, Ms. Heningburg's recovery time was four weeks longer than originally planned.

29.

Ms. Heningburg communicated with Agulue regularly throughout her recovery period in order to keep CSS apprised of her projected return to work. During each of these communications, Agulue led Ms. Heningburg to believe that

she would be permitted to return to her position at the end of her recovery period, which Agulue and Ms. Heningburg discussed would be April 30, 2012.

30.

Notwithstanding these communications, on Friday, April 27, 2012, Ms. Heningburg called Agulue to discuss her return to work on Monday, April 30, 2012.  During this phone call Agulue notified Ms. Heningburg, for the first time, that her "position had been filled" and that she had been terminated.

31.

In the period since the termination of her employment with CSS, Ms. Heningburg has sought new employment extensively, without success.

**COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT – FAILURE TO PAY MINUMUM WAGES AND OVERTIME WAGES**

32.

Plaintiff repeats and incorporates by reference Paragraphs 1 – 31  herein as though fully set forth herein.

33.

The Fair Labor Standards Act, codified at 29 U.S.C. § 201, et seq. (the "FLSA"), provides that every employer shall pay its employees at least the minimum wage set forth in 29 U.S.C. § 206 for all hours worked.

34.

The FLSA also provides, as set forth in 29 U.S.C. § 207, that no employer shall employ any employee for a workweek longer than forty hours unless such employee receives compensation for her employment in excess of the forty hours above specified at a rate not less than one and one-half times the regular rate at which she is employed.

35.

Ms. Heningburg was expected to work outside of normal business hours when processing payroll before a holiday, when answering after-hours calls on behalf of CSS and to perform other miscellaneous tasks assigned to her by Agulue. Ms. Heningburg was also expected to work through lunch or take abbreviated lunch periods when necessary to timely complete her job duties.

36.

In performing her job duties, Plaintiff often worked through her lunch periods but was not appropriately compensated for the time worked.

37.

In performing her job duties, Plaintiff often took after-hours calls and otherwise performed tasks on behalf of CSS outside of normal business hours but was not appropriately compensated for the time worked.

38.

Defendants were aware that Plaintiff worked these hours during her automatic lunch period, took after-hours calls and otherwise performed services of CSS outside of regular business hours, as Agulue specifically directed Plaintiff to engage in these tasks in order to fulfill the obligations of her job.

39.

Ms. Heningburg averaged 43 hours per week during the full-time period.

40.

Ms. Heningburg's regular rate of pay was $13.75 per hour and her overtime rate, set by law as one and one-half times the regular rate of pay, is $20.63 per hour.

41.

Defendants failed to properly compensate Plaintiff at the appropriate overtime rate for the hours she worked in excess of 40 hours per week.  Defendants sometimes paid Ms. Heningburg at a straight time rate for hours she worked over 40, and designated the time as "Retro Pay" in order to avoid paying Ms. Heningburg at the appropriate overtime rate.

42.

Defendants sometimes failed to pay Ms. Heningburg anything at all for time that she worked through her lunch period, when she worked on nights and

weekends, or when she otherwise performed tasks on behalf of CSS outside of the normal business hours.

43.

CSS and Agulue violated the FLSA by failing to pay minimum wage and overtime to Ms. Heningburg in accordance with the FLSA.

44.

Moreover the practice of CSS and Agulue to refuse to pay their employees regular or "straight time" compensation for all hours worked during lunch hours, after-hours and on weekends, and their practice of refusing to pay overtime compensation to their employees for hours worked in excess of forty hours per week, is in violation of the FLSA.

45.

Ms. Heningburg was not exempt from the minimum wage or overtime requirements of the FLSA.

46.

CSS is an employer that has failed to pay minimum wages and overtime in accordance with the FLSA.

47.

Agulue, the president of CSS, exercised complete operational control over CSS's day-to-day operations and more particularly set employment policies and

payroll practices for the company.  As a person acting directly in the interest of CSS in relation to its employees, Agulue was also Ms. Heningburg's employer for FLSA purposes pursuant to 29 U.S.C. § 203(d) as he was instrumental in causing CSS to violate the FLSA.

48.

Ms. Heningburg demanded that CSS pay her minimum wages and overtime wages that she is owed.

49.

Ms. Heningburg's demand that CSS pay her such wages was refused by CSS.

50.

Ms. Heningburg is owed unpaid minimum wages and unpaid overtime wages that she was unlawfully denied by Defendants.

51.

Ms. Heningburg is also due an additional amount in liquidated damages as provided by 29 U.S.C. § 216 as Defendants are employers that have failed to pay overtime in accordance with the FLSA.

52.

Ms. Heningburg is also due the attorney's fees and costs of suit incurred by her in bringing and pursuing this suit to recover her unpaid minimum wage and

overtime under the FLSA.  Ms. Heningburg's legal fees will continue to increase until the case is finally adjudicated.  Ms. Heningburg notified CSS and Agulue that she intends to seek payment of her attorney's fees and costs of suit and that an early resolution of her claim through payment of the wages she is rightfully owed would suspend the need for additional attorney's fees and costs.

53.

Defendants have been stubbornly litigious in refusing to pay Ms. Heningburg any amount for minimum wage or overtime compensation even after being put on notice that Ms. Heningburg intends to seek attorney's fees and costs of suit.

54.

Upon information and belief, Defendants have failed to make, keep and preserve the records required by 29 U.S.C. § 211 (c).

## COUNT II– VIOLATION OF THE FAIR LABOR STANDARDS ACT – RETALIATION

55.

Plaintiff repeats and incorporates by reference Paragraphs 1 – 54  herein as though fully set forth herein.

56.

Throughout her employment Ms. Heningburg routinely objected to Defendants' unlawful payroll practices as set forth herein.

57.

In addition, Ms. Heningburg often notified other employees of Defendants' unlawful practices and encouraged other employees to attempt to have underpayment issues properly corrected.

58.

On one occasion, Defendant Agulue admonished Ms. Heningburg that an hourly employee's paycheck was too much money even though the paycheck accurately compensated the hourly worker for the time worked. Ms. Heningburg was reprimanded for issuing the original check in such a large amount. Defendant Agulue took the employee's original check back from Ms. Heningburg and directed Ms. Heningburg to issue a manual check to the employee in an amount far less than what the employee was entitled to under the law.

59.

Ms. Heningburg vehemently objected to Defendant Agulue's unlawful actions.

60.

Ms. Heningburg's objections to Defendants' unlawful payroll practices continued throughout her employment. The last time that Ms. Heningburg

objected to any of Defendants' unlawful payroll practices was during her leave period following her March 2012 surgery.

61.

Ms. Heningburg's employment was terminated on Friday, April 27, 2012, before her scheduled return to work on Monday, April 30, 2012.

62.

Upon information and belief, Ms. Heningburg was terminated in retaliation for Ms. Heningburg's objection to Defendants' violations of federal law and for her notifying other employees of Defendants' unlawful practices and of their rights under the FLSA.

63.

Ms. Heningburg is entitled to compensatory damages, liquidated damages and attorney's fees and costs of this action as a result of Defendants' retaliatory conduct in violation of the FLSA.

## COUNT III – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT – INTERFERENCE

64.

Plaintiff repeats and incorporates by reference Paragraphs 1 – 63 herein as though fully set forth herein.

65.

At all relevant times, CSS was an "employer" within the meaning of the FMLA, 29 U.S.C. 2611(4), as CSS is engaged in commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current calendar year.

66.

At all times relevant hereto Agulue was an "employer" within the meaning of the FMLA as he was a corporate officer acting in the interests of CSS when he interfered with Ms. Heningburg's rights under the FMLA.  29 U.S.C. § 203(d); C.F.R. § 825.104 (d).

67.

At all relevant times, Ms. Heningburg was an "employee" of CSS within the meaning of the FMLA, having been employed by CSS for at least 12 months prior to her request for FMLA leave, and having provided at least 1,250 hours of service with CSS during the previous 12-month period.

68.

Ms. Heningburg had used less than 12 weeks of FMLA leave in the applicable 12-month period prior to the termination of her employment.

69.

Upon information and belief, Defendants willfully and intentionally interfered with Ms. Heningburg's exercise of her FMLA rights in violation of the FMLA by failing to reinstate Ms. Heningburg to her position as executive personal assistant or equivalent position and/or terminating Ms. Heningburg at the conclusion of her FMLA leave.

70.

As a result of Defendants' violation of the FMLA, Ms. Heningburg is entitled to compensatory damages including but not limited to back pay, front pay, lost future earnings, liquidated damages, and interest.

71.

Ms. Heningburg is also due the attorney's fees and costs of litigation incurred by her in bringing and pursuing this suit for violation of her rights under the FMLA. Ms. Heningburg's legal fees will continue to increase until the case is finally adjudicated. Ms. Heningburg notified CSS and Agulue that she intends to seek payment of her attorney's fees and costs of suit and that an early resolution of her claim through payment of back pay and reasonable front pay that she is rightfully owed would suspend the need for additional attorney's fees and costs.

## COUNT IV – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT – RETALIATION

72.

Plaintiff repeats and incorporates by reference Paragraphs 1 – 71 herein as though fully set forth herein.

73.

Upon information and belief, Defendants willfully and intentionally discriminated and/or retaliated against Ms. Heningburg because she exercised her rights under the FMLA, by terminating her employment immediately prior to her return to work following FMLA leave for surgery, in violation of the anti-retaliation provisions FMLA.

74.

Wherefore, Ms. Heningburg demands compensatory damages including but not limited to back pay and benefits, front pay and benefits, lost future earnings, liquidated damages, injunctive relief, interest, the costs of this action, including attorneys' fees and expenses, and all other just and proper relief.

WHEREFORE, Ms. Heningburg respectfully requests that this Court:

(1) Award Ms. Heningburg unpaid minimum wages in an amount to be shown at trial for Defendants' violations of 29 U.S.C. § 206;

(2) Award Ms. Heningburg unpaid overtime wages in an amount to be shown at trial for Defendants' violations of 29 U.S.C. § 207;

(3) Award Ms. Heningburg liquidated damages as required by 29 U.S.C. § 216 for Defendants' violations of 29 U.S.C. §§ 206 and 207;

(4) Award Ms. Heningburg wages lost and an additional equal amount in liquidated damages as required by 29 U.S.C. § 216 for Defendants' violation of 29 U.S.C. § 215;

(5) Award Ms. Heningburg back pay and front pay as required by 29 U.S.C. § 2617(a)(1)(A) for Defendants' violation of 29 U.S.C. § 2615;

(6) Award Ms. Heningburg liquidated damages as required by 29 U.S.C. § 2617(a)(1)(A)(iii) for Defendants' violation of 29 U.C.C. § 2615;

(7) Award Ms. Heningburg all litigation expenses incurred in bringing this action, including reasonable attorney's fees and costs of suit in an amount to be shown at trial as set forth in 29 U.S.C. § 216(b) and 29 U.S.C. § 2617(a)(3);

(8) Award Ms. Heningburg all other actual, general, special, incidental, statutory, and consequential damages to which she is entitled, including but not limited to pre-judgment and post-judgment interest on such monetary relief;

(9) Enter a judgment granting Ms. Heningburg such other, further and different relief as this Court may deem just, equitable and proper; and

(10)   Grant Ms. Heningburg a trial by jury.

This 28th day of June, 2013.

Respectfully submitted,

ANDERSEN, TATE & CARR, P.C.

/s/ Elizabeth L. Clack-Freeman
James C. Joedecke, Jr.
Georgia Bar No. 391885
Elizabeth L. Clack-Freeman
Georgia Bar No. 126888
Attorneys for Lori Heningburg

1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Telefax

1875514_1